**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ADA GIBBONS,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 03-6021
(D.C. No. CIV-01-1198-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **MURPHY** , **HARTZ** , and **McCONNELL** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Ada Gibbons appeals from an order of the district court affirming the Commissioner's determination that she is not entitled to Social Security disability benefits. We affirm.

I.

Ms. Gibbons alleged disability beginning January 15, 1984, due to back pain, memory loss, high blood pressure, fatigue, osteoporosis, a tail bone injury, scoliosis, anxiety, and depression. The administrative law judge (ALJ) determined that Ms. Gibbons was not disabled at step five of the five-step sequential process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), as she could perform light work with certain stated limitations.

We review the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether she applied the correct legal standards. See Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotations omitted). In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

## II.

On appeal Ms. Gibbons argues that the ALJ failed to evaluate the combined impact of all her impairments as required by 42 U.S.C. § 1382c(a)(3)(G) in assessing her residual functional ability. She further contends that the ALJ did not properly evaluate her subjective complaints and resulting functional limitations and therefore did not comply with Soc. Sec. Rul. 96-7p, 1996 WL 374186. Ms. Gibbons also asserts that the hypothetical question posed to the vocational expert (VE) was defective and the ALJ did not investigate whether conflicts existed between the VE's testimony and the Dictionary of Occupational Titles (DOT). Finally, Ms. Gibbons concludes that no evidence supports the ALJ's determination that she does not suffer episodes of deterioration in work-like settings due to her mental impairments.

## A.

Ms. Gibbons first argues that the ALJ did not take into account the combined impact of all her impairments when assessing her residual functional ability, as required by § 1382c(a)(3)(G). Section 1382c(a)(3)(G) requires that the ALJ "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."

-3-

More specifically, 20 C.F.R. § 404.1545(e) advises that when a claimant has a severe impairment which does not meet one of the listed impairments, the ALJ must nevertheless "consider the limiting effects of all . . . impairment(s), even those that are not severe, in determining . . . residual functional capacity." Social Security Ruling 96-8p further clarifies that in assessing a claimant's residual functional ability, the ALJ "must consider only limitations and restrictions attributable to medically determinable impairments." Id. 1996 WL 374184 at *2.

The record shows that the ALJ discussed each of Ms. Gibbons' impairments. See Aplt's App. at 13-14. He determined that her diagnosed mild degenerative disc disease was a severe impairment but it did not meet the listings. Although the record contained mention of other physical abnormalities, see id. 121, the treating physician did not prescribe any treatment for them beyond the medication he prescribed for Ms. Gibbons' spinal impairments. The record does not show that she ever received treatment for these other impairments. The ALJ also noted that Ms. Gibbons had signs of depression, anxiety, and anhedonia. The record contains evidence that she has been taking an anti-depressant since the 1970's. There is no evidence that her mental problems have increased since that time or that she has received any further treatment for them. The ALJ concluded that her mental impairments had only a slight effect on her activities of daily

living and social functions, she seldom had deficiencies of concentration, persistence or pace resulting in her failure to complete her work in a timely manner, and that she never experienced episodes of deterioration or decompensation at work. Id. at 22-23.

Although the ALJ did not specifically state that he was considering her impairments in combination, the conclusions he reached in determining Ms. Gibbons' residual functional ability show that he did so. The ALJ considered the determinations reached on the psychiatric review technique form and analyzed her physical limitations to conclude that Ms. Gibbons could perform the full range of light work with identified limitations based on her physical and mental impairments. See id. at 18.

B.

Ms. Gibbons contends that the ALJ did not properly evaluate her subjective complaints and resulting functional limitations because he did not "clearly articulate" the reasons for discrediting her testimony. Aplt's Br. at 21.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Credibility determinations, however, cannot be based on

intangible or intuitive reasons, but "must be grounded in the evidence and articulated in the determination or decision." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4; see also Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." (internal quotation marks omitted)). The ALJ discussed the medical evidence supporting Ms. Gibbons' physical and mental impairments and her testimony at the hearing and determined that her complaints were "not entirely credible in light of [her] daily activities; the medical treatment required, history of medical treatment, and the findings upon examination." Aplt's App. at 15.

Ms. Gibbons testified that she can drive and has no physician-imposed restrictions; that the reason she had no work history was that she was a housewife, not her disability; that until the day before the hearing, she had no back brace or similar device for her back pain; that she saw a counselor three times, but stopped because she could not afford to go any more; that she watches TV, cooks for herself, does light cleaning, shops, and does dishes and laundry; that she can stand, walk, and sit, each for an hour at a time; and that she can lift ten pounds.

In evaluating Ms. Gibbons' subjective complaints of pain, the ALJ could look at the persistence of Ms. Gibbons' attempts to find pain relief, including the amount of medication she uses, its effectiveness and any side effects; her

"willingness to try any treatment prescribed"; her use of assistive devices; her physician contact; the impact of psychological factors on her physical problems; and her daily activities. See Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). See also 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p.

We agree with the ALJ that the record does not fully support Ms. Gibbons' testimony. "In light of the narrow scope of our review, we are compelled . . . to conclude that the record contains substantial support for the ALJ's decision." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

C.

Ms. Gibbons argues that the hypothetical question presented to the VE was defective. Ms. Gibbons acknowledges that the ALJ found her ability to do light work was further limited due to her need for a sit/stand option, her limitations in dealing with others, and her lifting limitations of only ten pounds frequently and only twenty pounds occasionally.

We first emphasize that hypothetical questions "need only reflect impairments and limitations that are borne out by the evidentiary record." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). In his hypothetical the ALJ assumed a person who could do light work. The definition of light work includes lifting no more than twenty pounds, with frequent lifting of objects weighing up

to ten pounds. 20 C.F.R. § 404.1567(b). He also assumed that the person had a slight limitation in social functioning. See Aplt's App. at 49. Ms. Gibbons' counsel further limited the hypothetical by imposing a sit/stand option and a moderate limitation in social functioning. Id. at 50. The VE stated that even with the additional limitations suggested by counsel, there were still jobs Ms. Gibbons could perform. Id. at 51-52. (Ms. Gibbons complains on appeal that the hypothetical question stated only that she can sit for at most one hour at a time, whereas the ALJ found that 45 minutes is her maximum sitting time. The difference is immaterial, however, because the VE said that a sit/stand option is available in "many instances." Id. at 51.) In his decision the ALJ did not include the limitations of counsel's second proffered hypothetical that Ms. Gibbons must lie down for thirty to sixty minutes every three hours. Id. at 54. But the record supports the ALJ's rejection of this limitation.

D.

Ms. Gibbons contends the ALJ did not investigate whether conflicts existed between the VE's testimony and the Dictionary of Occupational Titles (DOT).

Social Security Ruling 00-4p, 2000 WL 1898704, explains that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between

-8-

that [VE] evidence and information provided in the DOT." Id. at *4. "If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict." Id.

Our review of the record demonstrates that the ALJ satisfied his obligations under Social Security Ruling 00-4p. The VE testified that a person with Ms. Gibbons' limitations could perform work in an identified group of light, unskilled jobs. He also stated that the source of his information was the DOT. See Aplt's App. at 51-52. Once the VE stated that he was relying on the DOT, the ALJ had no further duty to investigate. Our conclusion is supported by Ms. Gibbons' failure to identify any discrepancies.

We agree with the Fifth Circuit that

[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

Carey v. Apfel, 230 F.3d 131, 146-147 (5th Cir. 2000); cf. Haddock v. Apfel, 196 F.3d 1084, 1091-92 (10th Cir. 19 99) (VE testimony appeared to contradict DOT).

E.

Finally, Ms. Gibbons concludes that there is no evidence in the record to support the ALJ's determination that she does not suffer episodes of deterioration in work-like settings due to her mental impairments.

Ms. Gibbons was examined by one consulting psychologist. He opined that she had good judgment, could abstract, and had good concentration and short-term memory. Another consulting psychologist did not examine Ms. Gibbons but only reviewed her records. He concluded that Ms. Gibbons had had one or two episodes of deterioration in work-like settings. The record, however, contains no evidence to support this conclusion. Further, this consultant also concluded that her mental impairment was "nonsevere." Aplt's App. at 150. In essence, Ms. Gibbons is asking this court to hold that when the record contains no evidence that a claimant does not suffer a symptom, the ALJ must conclude that she has that symptom. The lack of evidence to disprove an impairment is not proof that an impairment exists. See, e.g. , Thompson v. Sullivan , 987 F.2d 1482, 1491 (10th Cir. 1993) ("The absence of evidence is not evidence."). The ALJ did not commit

-10-

error by refusing to credit the consulting psychologist's opinion that she had suffered episodes of deterioration in work-like settings.

### III.

Ms. Gibbons is asking this court to reweigh the evidence, which we cannot do. See Casias, 933 F.2d at 800. The overarching principal guiding our review is whether Ms. Gibbons has shown an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .." 42 U.S.C. § 423(d)(1)(A). None of the physicians who examined or treated Ms. Gibbons suggested that she was unable to work, much less for the required period of twelve continuous months, as a result of her impairments.

The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge